IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL DIXON,

        Petitioner,

vs.                                                      CIV 14-0794 WJ/KBM

VINCENT HORTON, Acting Warden,
and HECTOR BALDERAS,[1]
New Mexico Attorney General,

        Respondents.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Petitioner Michael Dixon's ("Dixon") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, filed on September 2, 2014 (*Doc. 1*) and fully briefed November 10, 2014 (*Doc. 10*). The Honorable William P. Johnson referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case (*Doc. 3*). Having reviewed the submissions of the parties and the relevant law, the Court is able to make a decision based on the record and recommends that Dixon's application be denied along with his request for an evidentiary hearing.

### I.    Background Facts and Procedural Posture

On May 7, 2010, Dixon was found guilty of trafficking methadone in violation of NMSA 1978 §30-31-20(A)(2), and, on June 13, 2011, the state court sentenced him to a

---

[1] Hector Balderas was elected New Mexico Attorney General during the pendency of this law suit and is being substituted for former Attorney General Gary K. King.

ten-year term of imprisonment that includes a one-year enhancement as a habitual offender. *Doc. 9-1* at 1-3. At trial, the Court allowed the introduction of a recorded conversation between Dixon and a confidential informant ("CI") who introduced him to an undercover officer ultimately leading to Dixon's arrest. *Doc. 9-1* at 16, 18, 19. The record indicates that the State did not disclose the CI until the eve of trial, and his identity was never revealed. *Doc. 9-1* at 23-25. In accordance with the advice of his attorney, Dixon did not testify at his trial. *Doc. 1* at 6.

Dixon filed several post-conviction proceedings, including a direct appeal of his conviction, two state habeas petitions, and two federal habeas petitions. All of Dixon's attempts at post-conviction relief are based on the same facts but different legal theories. On direct appeal, Dixon argued that the trial court erred by failing to order the State to disclose the identity of the CI and by refusing to dismiss the indictment on the basis that Dixon was not timely arraigned. The New Mexico Court of Appeals dismissed Dixon's appeal, finding that he did not establish that the CI's testimony was relevant to his entrapment defense or establish prejudiced because his arraignment took place two days after the time requirement in the New Mexico rules. *Doc. 9-1* at 28-32. The New Mexico Supreme Court denied his writ of certiorari. Doc. 9-1 at 57

Following the appeal, Dixon filed his first habeas petition in state court alleging ineffective assistance of counsel for "failure to develop the record" with regard to the disclosure of the CI's identity and for advising him that he should not testify on his own behalf. The Twelfth Judicial District Court dismissed the petition, and Dixon did not appeal that decision. *See Doc. 9-2*.

After finding no relief in the state court, Dixon filed a federal habeas petition

2

arguing that: (1) the trial court's failure to order the disclosure of the identity of the CI was a violation of his Fifth, Sixth, and Fourteenth Amendment rights; (2) the prosecution failed to timely disclose the existence of the CI; and (3) there was a conflict of interest in the public defender's office who represented both Dixon and the CI. *See Dixon v. Hatch*, CIV 13-0148 MV/LAM, Doc. 1, filed February 14, 2013. As Dixon's petition contained both exhausted and unexhausted claims, the Magistrate Judge recommended that the petition be dismissed without prejudice so Dixon could return to state court to fully exhaust his claims and gave him the opportunity to file an amended complaint that included only the exhausted claims. *Id.*, Doc. 8, filed July 1, 2013. Dixon did not object to the recommendation or file an amended complaint, and the District Judge dismissed the case. *Id.*, Docs. 9 and 10, filed August 2, 2013.

During the pendency of the federal proceeding, Dixon filed a second state habeas petition alleging a "discovery violation" for the State's failure to disclose the CI despite his request for discovery. *Doc. 9-3* at 5-8. He further asserted that the trial court abused its discretion in denying his motion to disclosed the identity of the CI without first conducting an *in camera* inspection. *Id.* at 9-13. Dixon again contended that the indictment should have been dismissed because his arraignment was untimely. *Id.* at 14-17. The state court dismissed Dixon's second petition, and his petition for a writ of certiorari to the New Mexico Supreme Court was denied. *Doc. 9-3*, at 21-23, 48. Dixon then, once again, sought relief in this Court.

II. **Dixon's Claims**

In his current petition, Dixon alleges ineffective assistance of counsel by his attorney for advising him to not take the stand when he wanted to testify on his own

behalf and for allowing the introduction of the recording of the CI to the jury "even though proper foundation and disclosure were not given." *Doc. 1* at 6.  Dixon once again contends that his due process rights were violated because he was not arraigned in a timely manner. *Id.* at 7.

## III.  Discussion

### A.  Dixon's Mixed Petition

Respondents point out that Dixon's petition is "mixed."  A mixed petition for habeas corpus relief is one in which "a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not." *Rhines v. Weber*, 544 U.S. 269, 271 (2005).  Dixon has not yet exhausted his claims for ineffective assistance of counsel.  "Congress has emphatically directed us that habeas petitioners seeking relief in federal court must first exhaust all available state court remedies—that is, unless doing so would be futile because of 'an absence of available State corrective process' or because 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007) (quoting 28 U.S.C. § 2254(b)(1)).  Exhaustion requires that the "federal constitutional issue has been presented to the highest state court, either on direct appeal or in a post-conviction challenge." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

When faced with a mixed petition the Court has several options.  It may:

(1) dismiss the mixed petition in its entirety,

(2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims,

(3) permit the petitioner to dismiss the unexhausted claims and

4

  proceed with the exhausted claims; or

  (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citing *Rhines*, 544 U.S. at 274 and 28 U.S.C. § 2254(b)(2)) (other citations omitted).  Here, the Court will deny the petition on the merits, as none of Dixon's claims have any merit, a subsequent petition in this Court would be time-barred,[2] and Dixon has not established good cause to stay his petition.[3]

  B. **The AEDPA**

  Federal courts have statutory authority under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), to issue habeas corpus relief for persons in state custody.  *Harrington v. Richter*, 562 U.S. 86 (2011).  The AEDPA "circumscribes our review of federal habeas claims that were adjudicated

---

[2] The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations for the filing of a § 2254 petition. *Williams v. Workman*, 448 F. App'x 828, 829 (10th Cir. 2011) (citing 28 U.S.C. § 2244(d)(1)). This limitations period begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.*  By both the Court's and Respondent's calculations, the one-year limitations period in this case has run.

[3] The "stay and abeyance" option "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Ward v. Medina*, 502 F. App'x 780, 783 (10th Cir. 2012) (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277.  As the petitioner, Dixon bears the burden to establish good cause. *See Carter v. Friel*, 415 F. Supp. 2d 1314, 1317 (D. Utah 2006) (unpublished); *Mathis v. Bruce*, No. 07-3049-SAC, 2007 WL 2900209, at *2 (D. Kan. Oct. 2, 2007) (unpublished); *Francis v. Pryor*, No. 13-3110-SAC, 2014 WL 298628, at *2 (D. Kan. Jan. 28, 2014) (unpublished).

Dixon admits that he did not appeal his first state habeas petition, which included claims for ineffective assistance, because he "was not aware he could [a]ppeal it," (*Doc. 1* at 4).  Plaintiff's lack of knowledge does not excuse his failure to exhaust. *See Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (ignorance of the law does not constitute good cause for issuing a stay under *Rhines*); *accord Trotter v. McKune*, No. CIV.A. 09-3076-WEB, 2010 WL 750248, at *8 (D. Kan. Mar. 2, 2010) (unpublished); *Francis*, 2014 WL 298628, at *3.  Accordingly, Dixon cannot establish that there is "good cause" to stay this case.

on the merits in state-court proceedings." *Hooks v. Workman*, 689 F3d 1148, 1163 (10th Cir. 2012). The AEDPA does not require that a state court provide a statement of reasons. "The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Harrington*, 131 S. Ct at 784. Therefore, even if the state court failed to provide an opinion stating its reasoning, as long as the state court has made a determination on the merits, Section 2254(d) bars relitigation of that claim in a federal habeas action. *Id.*

This Court may only grant relief from a state court decision where a petitioner demonstrates that the trial court's resolution of his claims was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hooks*, 689 F.3d at 1163 (quoting 28 U.S.C. § 2254(d)(1), (2)). In this two-step inquiry, the threshold question is whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (2011); *see also Williams v. Taylor* 529 U.S. 362, 390, 120 S. Ct. 1495 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir.2004)) (internal quotations omitted).

A state-court decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth" by the Supreme Court or "if it decides a case differently than [the Supreme Court has] done on a set of materially

indistinguishable facts." *Hooks*, 689 F.3d at 1163 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) (brackets in original). "A state-court decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case.'" *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by "clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)).

The AEDPA precludes this Court from issuing a writ "simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *Byrd*, 645 F.3d at 1166. Instead, the application must also be "objectively unreasonable." *Id.* As long as "fairminded jurists could disagree" as to the correctness of the state court's decision, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), this "'highly deferential standard for evaluating state-court rulings [ ] . . . demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) (brackets in original). For federal habeas claims not adjudicated on the merits in the state courts, the Court must review the claim *de novo* and the deferential standards of Section 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

  **C.** <u>**Ineffective Assistance of Counsel**</u>

The Sixth Amendment provides for the right to the assistance of counsel in order to "protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "[T]he right to counsel is the right to the effective assistance of counsel."

*Id.* (citation and quotations omitted).   "To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show: (1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.'"  *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

*Strickland* demands that the defendant establish the attorney's "representation fell below an objective standard of reasonableness" with a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial."  *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland* 466 U.S. at 687).  The Court must give "considerable deference to an attorney's strategic decisions" and "'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).  However, "[t]he court need not address whether counsel's performance was deficient if defendant fails to prove actual prejudice.  Prejudice is shown if defendant establishes a reasonable probability that the outcome of the trial, sentencing, or appeal would have been different had counsel raised the omitted claim or argument."  *United States v. Hill*, No. CR-05-111-L, 2009 WL 1531533 (W.D. Okla. June 1, 2009) (citing *Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001), *cert. denied*, 537 U.S. 835, 123 S. Ct. 145 (2002)).  Dixon asserts his counsel was ineffective by "not allowing" him to take the stand and by "allowing" the introduction of the recording of the CI into evidence in spite of the untimely disclosure.

    1. <u>Right to testify</u>

"A criminal defendant has a constitutional right to testify in his own behalf at trial."

*Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (citations omitted). That decision "lies squarely with the defendant; it is not counsel's decision." *Id.* It is defense counsel's responsibility to "inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him." *Id.* "Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy." *Id.*

Here, Dixon does not aver that counsel failed to inform him of his right to testify or that the decision to do so was not his alone. He does not explain what, if anything, his counsel did to prevent him from testifying. Rather, Dixon goes no further than to allege that he "was advised by his attorney not to take the stand." *Doc 1* at 6. It is not constitutionally deficient to advise one's client to not take the stand. As noted by the state district court, "Defendant apparently chose to follow his attorney's advice." *Doc. 9-2* at 41. Further, Dixon does not explain how the outcome of the trial, sentencing, or appeal would have been different had he testified on his own behalf. Indeed, as Respondent points out, had Dixon testified, cross-examination could have exposed his prior felony convictions, which would have undermined his defenses. *Doc. 9* at 12.

    2. <u>Introduction of the CI Tape to the Jury</u>

Dixon contends that his attorney was ineffective because he "allowed" the introduction of the tape of the CI to the jury.[4] *Doc. 1* at 6. In his reply, Dixon explains

---

[4] To the extent Dixon argues that the trial court should not have allowed the introduction of the tape, that claim is not cognizable in this habeas petition. *See Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010) (quoting *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir.1997)) (evidentiary rulings by the state court will not be disturbed unless the court's error was "so grossly prejudicial that it fatally infected the trial and

9

that his attorney failed to object to the introduction of the tape, and it was subsequently played to the jury. *Doc 10* at 8. Dixon does not explain, however, how his attorney's failure to object prejudiced his defense. The tape, recorded by the undercover officer, captures the CI introducing Dixon to the undercover officer and the subsequent drug transaction. *Doc. 9-1* at 19; *Doc. 9-3* at 9. The officer was present at trial and testified about the introduction and the drug transaction. *See Doc. 9-1* at 19, 25, 44-45; *Doc. 9-3* at 11-12. In effect, the recording served only to corroborate the officer's trial testimony. Even if Dixon's trial counsel was deficient for failing to object to the introduction of the tape, there is no indication that its exclusion would have changed the outcome of the case.

Dixon cannot establish that his attorney's actions fell below an objective standard of reasonableness or that he was prejudiced by any of his attorney's acts or omissions. Thus, his claims for ineffective assistance of counsel must fail.

### D. Due Process

Dixon asserts a violation of his due process rights because he was arraigned two days after the time requirement contained in Rule 5-604 NMRA (*Doc. 9-1* at 17, 29). "[I]n order to establish a due process violation, the defendant must show that the delay 'caused him actual prejudice in presenting his defense.'" *Jones v. Angelone*, 94 F.3d 900, 906 (4th Cir.1996) (*quoting United States v. Gouveia*, 467 U.S. 180, 192, 104 S. Ct. 2292, 2299 (1984)); *see also, Ysasi v. Brown*, No. CIV 13-0183 JB/CG, 2014 WL 936835 (D.N.M. Feb. 28, 2014); *Robertson v. Price City Police Dep't*, 83 F. App'x 286 (10th Cir. 2003). Simply put, Dixon does not establish that the two-day delay caused

---

denied the fundamental fairness that is the essence of due process"). Dixon does not contend that the court's admission of the tape recording was grossly prejudicial or fundamentally unfair, only that his attorney was ineffective for allowing its introduction. *Doc. 1* at 6.

him actual prejudice in presenting his defense and, consequently, does not establish a due process violation.

### E.     Evidentiary Hearing

A petitioner who seeks an evidentiary hearing in federal court must clear the initial hurdle in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Miller v. Champion*, 161 F.3d 1249, 1252-53 (10th Cir. 1998) (citation and quotation omitted).  Dixon requests a hearing "to determine the extent of the counsel['s] advise on the infringement of his right to testify on his own behalf." *Doc. 10* at 9.  He has not, however, developed the factual basis for this claim in the state court proceedings and does not show that either of the exceptions in § 2254(e)(2)(A) apply.  A hearing is not warranted in this case.

### IV.    RECOMMENDATION

For the reasons set forth above, the Court recommends that Dixon's Application for Writ of Habeas Corpus (*Doc. 1*) and his request for an evidentiary hearing be denied

and this case dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE